# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# DAVENPORT DIVISION

| | | |
|---|---|---|
| KENNETH RALPH FRY, | * | CIVIL NO. 3:08-CV-00049-CRW-TJS |
| | * | |
| Plaintiff, | * | |
| | * | **REPORT AND** |
| v. | * | **RECOMMENDATION** |
| | * | **ON ENTRY OF** |
| MATTHEW P. O'DEA, | * | **DEFAULT JUDGMENT** |
| | * | |
| Defendant. | * | |

## I. INTRODUCTION

Plaintiff Kenneth Ralph Fry filed a pro se Complaint (Document No. 1) on May 1, 2008, against an unidentified defendant. Fry alleges the defendant posted on the internet libelous and defamatory statements concerning his appearance on a video which appeared on YouTube. (*Id.*) Fry requests relief in the amount of ten million dollars for defamation of character, emotional distress, and potential loss of income caused by the defendant's actions. (*Id.*) Fry brought the action in this court under diversity jurisdiction, 28 U.S.C. § 1332, and was granted permission to proceed *in forma pauperis* in the case. (*See* Text Order (Document No. 4.))

On July 17, 2008, Fry filed an Amended Complaint (Document No. 7) which named Matthew P. O'Dea as the defendant. Fry identified O'Dea from YouTube user accounts under which the alleged defamatory statements were posted. (*See* Exs. to Amended Complaint.) A Summons was issued on July 17, 2008. (Document No. 8.) As ordered by

the court, Fry submitted a Report of Service Attempts (Document No. 11) which indicated Fry had hired a process server who was unsuccessful in serving the summons on O'Dea.

On September 9, 2008, Magistrate Judge Ross A. Walters entered an Order Granting Plaintiff's Motion for Service Extension and Service by U.S. Marshal (Document No. 12). According to a Return of Service submitted by a United States Deputy Marshal, copies of the summons and complaint were left with O'Dea's father on October 24, 2008, at a residence in California. (*See* Document No. 14.)

On November 17, 2008, Fry filed a Motion for Default Judgment (Document No. 15). In a Text Order (Document No. 16) entered December 15, 2008, Magistrate Judge Walters directed the Clerk of Court to enter default against O'Dea. Default was entered pursuant to Federal Rule of Civil Procedure 55(a) on December 16, 2008. (*See* Document No. 17.)

United States District Court Senior Judge Charles R. Wolle referred the matter to this magistrate judge pursuant to 28 U.S.C. section 636(b)(1)(B) for the purpose of conducting an evidentiary hearing and submitting a report and recommendation. (*See* Text Order (Document No. 21).)

An initial hearing was held on February 4, 2009, but continued at the request of Fry after he understood the purpose of the evidentiary hearing. (*See* Text Order (Document No. 27); Clerk's Court Minutes (Document No. 28).) The hearing was rescheduled for and concluded on April 17, 2009. (*See* Clerk's Court Minutes (Document No. 32).)

The following report and recommendation is based on the pleadings, and the testimony and exhibits presented by Fry during the hearing. Defendant O'Dea has not appeared, either personally or by counsel, or filed any pleading in this case. Notice of the

initial evidentiary hearing was sent to O'Dea by regular and certified mail to the address of service in California, but was returned as undeliverable. (*See* Document Nos. 24, 25, 26, 29.)

## II.  REPORT

As set forth in the Complaint and Amended Complaint, Fry alleges O'Dea posted libelous and defamatory statements on the internet during a period from February 2008 through April 2008 in reaction to Fry's appearance on a video posted on YouTube, entitled "Nervous Kojak Clone Betrayed By Brainless Rednecks 1&2". Fry asserts O'Dea utilized the user names "dallasmatt30", "youareretarded1", and "ImKenFry" to post the defamatory statements. For example, Fry alleges O'Dea is responsible for the following postings:

> dallasmatt30 (2weeks ago) Show Hide
> Ken Fry is a Burglar? arrested for theft...and a REGISTERED SEX OFFENDER FOR AN UNDERAGE LITTLE GIRL!!!!!! NASTY FUK THAT SHOULD BE SHOT AND KILLED ON SPOT; He went to Vietnam To Buy a wife cuz hes so ugly he cant even get laid in his own country!!!!!!!! Sick FuK!!!!! LIAR LIAR LIAR
>
> dallasmatt30 (2 weeks ago) Show Hide
> Agreed!!!!:! Mr. Fry had MOLESTED little girls in Vietnam!!!! HE IS SICK!!!!!!!! He purchased a wife there cuz hes so ugly he couldn't get laid in his own country!!!! That's why he was so angry at JJ for what his sentence was for!!! HES A PEDOPHILE!!! LET THE WORLD KNOW!!!!!!!!!!
>
> dallasmatt30 (2 weeks ago) Show Hide
> The plaintif IS a registered SEX OFFENDER who went across seas to purchase a wife in vietnam  He denied to say this on national TV, but he MOLESTS CHILDREN!!!! It just so happened it wasn't on American soil. KEN FRY is a PEDOPHILE! NASTY!!!!!!!!
>
> youareretarded1 (6 days ago)
> Dude, you are a molestor...everyone on youtube knows. Mail order catalogue bride??? you are one nasty mofo! Seriously, I can see why no American girl wanted you...but still, thats disgusting!!!!

> youareretarded1 (6 days ago)
> I never got that! Cant believe ppl are so hard up to actually fly to another country and buy a wife. This dude is ugly! If I was the last chick on earth I would go lesbo if he was whats left! HAHAHAHA
>
> youareretarded1 (6 days ago)
> LOL, I concur!!! He is the ugliest looking thing I seen on tv in awhile! So he really is a molestor?? NASTY!!!! I can see why he would post this and try and defend himself for his criminal record he has.

(*See* Attachments to Amended Complaint.) The postings were eventually removed from the YouTube site at the request of Fry by support staff from Google. (*Id.*)

To explain the effect of the postings on him, Fry made the following statement during the evidentiary hearing:

> Until the day I read the first postings from the Defendant, I thought everything was going to be all right. I had all of my chronic medical conditions under control, I was gainfully employed, and looking toward certification at an international organization for standardization lead auditor. In addition to these accomplishments, the nonfiction book I authored was in final stages of publication and were set for release the 1st of May, 2008.
> As with any other day, I checked the postings on YouTube. As I sat there reading the horrible lies the Defendant set forth for the world to see, my stomach turned to fire and my trapezoid muscle spasmed so hard it felt like I was being stabbed with a hot ice pick, then the realization that anyone could read these lies, a feeling of hopelessness and hopelessness washed over me like a tsunami leaving me physically ill for months.
> The intense acid reflux, vomiting, and diarrhea with a low grade occular [sic] migraine were my daily companions so that on top of work, school, and the book, I was sick and I had the crisis management with Google to get the postings removed. It did not help the situation when the Defendant created two new accounts to continue posting lies. By the time all of the postings were removed, it was months of accrued harm with the continued threat that the postings would reappear. All of these factors combined to make this sustained harm uncalculable [sic]. That's all I have to say.

(Hr'g Tr. pp. 11-13.) In further explanation of the effects on his health, Fry stated:

> Up to this point I was just taking S-Citalopram and naproxen sodium for my pain and I had it pretty much under control where I wasn't in pain and if I was,

> it was a two to three naproxen would handle it.  Since then they've increased
> my medicines to the Hydrocodone and the Flexeril so that I can sleep at night.

(*Id.* at 13.)

In support of his claim for damages, Fry called Jeffrey Bassman, D.D.S., to testify. (Hr'g Tr. pp. 5-9.)   Dr. Bassman is a general dentist with expertise in treating temporomandibular joint dysfunction ("TMJ"). (*Id.* at 5.)   Dr. Bassman explained the symptoms, causes and treatment of TMJ in general terms, including that stress can be a factor for increasing symptoms of TMJ. (*Id.* at 5-8.)  Dr. Bassman was not treating Fry, however, and had not examined Fry or diagnosed his condition in any way. (*Id.* at 9.)  Despite his efforts, Fry was unable to have a treating physician or psychiatrist testify on his behalf. (*See* Status Report (Document No. 30).)

Fry offered 4 exhibits which were admitted into evidence for the hearing. (*See* Clerk's Court Minutes (Document No. 32).) Exhibits 1, 2 and 4 are medical records and were placed under seal. (*Id.*)  Exhibit 1 is an excerpt of a Progress Note, dated February 25, 2009, for a psychiatry appointment at the VA Medical Center ("VAMC"), in Iowa City, Iowa.  Exhibit 2 is a dental x-ray of Fry's mouth, dated January 10, 2001.  Exhibit 4 is a copy of Fry's medical records from VAMC which consists of 92 printed pages.

A review of the medical records shows Fry has received treatment for various ailments including TMJ, anger and depression, and has been prescribed various medications.  The records contain minimal reference, however, to the defamatory statements made by O'Dea or the resulting effect on Fry's health condition.

In a psychiatry Progress Note dated May 29, 2008, the record states:

> Presented to clinic this afternoon for a.m. appt. "I'm actually doin' pretty good . . . as long as good stuff is happenin'" Feels good that court case will be started soon, as he is filing suit against "john doe" for libel on internet. Brought in paperwork from court, as well as book that he recently had published.

(Ex. 4 at printed p. 54.) In a Progress Note for a subsequent psychiatry appointment dated September 26, 2008, the record states:

> The patient presents today for routine follow-up. He reports that he is "trapped in a fascist police state." He then advised me to look on the internet to see him on Judge Judy talking about he was wronged by a local official while he was over in Vietnam. He also reports that he is suing an individual for libel on the internet.

(*Id.* at printed p. 30.) Finally, the record for the psychiatry appointment on February 25, 2009, contains the following note:

> Short term goal: Encouraged medication compliance and psychiatric follow-up. The patient continues to struggle with legal issues from past employers, however, has noticed substantial improvement in his mood since starting the Citalopram. He desires a legal letter stating not only that he is treated here but conjecturing on the possible effect that reading negative information about himself on the internet had on his mental health. I wrote a letter instead advising him to request a complete release of information which will be more complete, not contain conjecture, and is more appropriate as I was not treating the patient at the time of the incident in question.

(Ex. 1, at printed p. 15; Ex. 4, at printed p. 16.)

Exhibit 3 is a comparison of the sales ranking for a book Fry authored to the rankings of other similar books. (Hr'g Tr. p. 10.) Fry drafted Exhibit 3 from information he obtained from internet sites for Amazon, Barnes & Noble and Book Surge. (*Id.* at 10-11.) He contends the comparatively low sales for his book were caused by the defamatory statements made by O'Dea. As explained by Fry,

> Exhibit 3 is the sales records from my book compared to other true stories that were released in the same month and as you can tell, my book was ranked two million right now with the sales of less than 50 copies in comparison to the other books that were released, they're all ranked 100,000 or better being a true crime story so when it comes to proving that negative effect, I can't prove that people that read that statement that was on YouTube correlated it to the book, but two million when the other true stories are ranked a little bit more than that so that's the evidence I can prove for the book.

(*Id.* at 10.)

Fry reiterated his request for ten million dollars during the hearing. (*Id.* at 15.)

### III. ANALYSIS OF CLAIM

Pursuant to Federal Rule of Civil Procedure 55, "[t]he court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2)(A)-(D).

> Upon default, the factual allegations of a complaint (except those relating to the amount of damages) are taken as true, but "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."

*Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010)(quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2688 at 63 (3d ed. 1998)).

Facts relating to the amount of damages "must be proved in a supplemental hearing or proceeding." *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001); *see also American Red Cross v. Community Blood Ctr.*, 257 F.3d 859, 864 (8th Cir. 2001)(quoting *Everyday Learning*).

Here, the unchallenged facts alleged by Fry appear to constitute a legitimate cause of action for defamation. Under Iowa law, "[d]efamation includes the twin torts of libel and

-7-

slander." *Yates v. Iowa West Racing Ass'n*, 721 N.W.2d 762, 768 (Iowa 2006). Slander involves oral publication of defamatory statements, and libel involves written publication of defamatory statements. *Id.* "Generally, the statements must be false and demonstrably about the person claiming to be defamed." *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996). The truth of a statement is an absolute defense. *Id.*

The Iowa Supreme Court explained the underlying principles as follows:

> The law of defamation embodies the public policy that individuals should be free to enjoy their reputation unimpaired by false and defamatory attacks. An action for defamation or slander is based upon a violation of this right.
>   The gravamen or gist of an action for defamation is damage to the plaintiff's reputation. It is reputation which is defamed, reputation which is injured, and reputation which is protected by the law of defamation.
>   Defamation is an impairment of a relational interest; it denigrates the opinion which others in the community have of the plaintiff and invades the plaintiff's interest in his reputation and good name. A cause of action for defamation is based on the transition of derogatory statements, not any physical or emotional distress to plaintiff which may result. Defamation law protects interests of personality, not of property.

*Kiesau v. Bantz*, 686 N.W.2d 164, 174-75 (Iowa 2004)(quoting *Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 221 (Iowa 1998)(quoting 50 Am.Jur.2d *Libel and Slander* § 2, at 338-39 (1995)); *Yates*, 721 N.W.2d at 768 (same).

Under those principles, to establish a claim of defamation, Fry must show O'Dea published a statement that was defamatory of and concerning Fry, and resulted in injury to Fry. *See Kiesau*, 686 N.W.2d at 175; *Taggart v. Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996); *see also Brummett v. Taylor*, 569 F.3d 890, 892 (8th Cir. 2009). Taking the factual allegations of Fry as true, he has met those elements.

Furthermore, Fry's allegations, taken as true, establish the statements by O'Dea as defamatory per se under Iowa law.

> Some statements are considered to be defamatory per se if they are of a nature that a court can presume as a matter of law that their publication will have a defamatory effect. To accuse a person of an indictable crime is defamation per se. The crime must either involve moral turpitude or subject the person accused to a sentence of incarceration.
>
> * * *
>
> Ordinarily, a plaintiff must prove that defamatory statements were false, made with malice, and caused damage. If a statement is determined to be defamatory per se, the elements of malice, falsity, or damage need not be proven.

*Huegerich*, 547 N.W.2d at 221 (internal citations omitted); *see also Schlegel*, 585 N.W.2d at 222; *Kerndt v. Rolling Hills Nat'l Bank*, 558 N.W.2d 410, 418 (Iowa 1997); *Lara v. Thomas*, 512 N.W.2d 777, 785 (Iowa 1994); *Vinson v. Linn-Mar Community Sch. Dist.*, 360 N.W.2d 108, 115-16 (Iowa 1984).

While Fry's allegations may constitute a legitimate cause of action for defamation, the evidence he has submitted to support his claim for damages falls well short of warranting judgment for ten million dollars. "Damages 'may not be determined by mere speculation or guess,' but they may be subject to 'just and reasonable inference, although the result may be only approximate." *Comcast v. Multi-Vision Electronics, Inc.*, 491 F.3d 938, 947 (8th Cir. 2007)(quoted citation omitted).

Fry's claim for ten million dollars in damages is primarily built upon unfounded speculation and conjecture. Fry's testimony appeared to be sincere and credible; but there is minimal evidence to support the extreme amount of his damage claim.

As noted by the Iowa Supreme Court, "damages may not be awarded based solely on the defamatory statements." *Lara*, 512 N.W.2d at 786. In general, "damages are limited to the natural and probable consequences of the publication", which may include recovery for emotional distress and resulting bodily harm. *Id.*; *see also Wilson v. IBP, Inc.*, 558 N.W.2d 132, 140 (Iowa 1997); *Rees v. O'Malley*, 461 N.W.2d 833, 839 (Iowa 1990).

As he candidly admitted during the hearing, Fry is unable to prove a connection between people reading the defamatory statements posted on YouTube by O'Dea and the comparative low sales for his book. There is also no specific evidentiary connection with any job loss or inability to obtain a specific job. He also did not provide specific evidence as to how his reputation has been injured by identifying any third person who read the defamatory statements.

The evidence also fails to sufficiently establish a causal relationship between the defamatory statements and all of Fry's various medical problems. A fair reading of the medical records indicate there are several underlying causes for his physical and mental ailments. Other than his own testimony, there is minimal evidence of a direct link between O'Dea's conduct and any specific medical condition or aggravation of a preexisting condition. Fry did not present any billings or receipts for the amount of medical expenses he has payed.

At most, the evidence presented by Fry establishes he suffered stress, and even some emotional distress, as a result of the incident. Fry has not shown, however, the extent of the stress and emotional distress he has suffered as a result of the defamatory statements supports the large amount of damages he seeks.

Fry's request for a ten million dollar judgment is vastly disproportionate to past jury awards in Iowa defamation cases, some of which appear to have involved more evidentiary support than offered by Fry in this case. For example, in *Lara*, the plaintiff claimed injury to her reputation, feelings, humiliation, and mental anguish. *Lara*, 512 N.W.2d at 786. The jury awarded $10,000 for general damages. *Id.*; *see also Wilson*, 558 N.W.2d at 140 (holding evidence supported jury verdict of $4,000 as compensatory damages on defamation claim); *Spencer v. Spencer*, 479 N.W.2d 293, 297-98 (Iowa 1991)(holding evidence supported jury award of $25,000 for loss of reputation and physical and mental pain and suffering); *Rees*, 461 N.W.2d at 839-40 (holding jury award of $250,000 was excessive). Although somewhat difficult to compare in regard to the specific evidence presented to those Iowa juries, the cases offer reasonable parameters to consider for this case.

In sum, based on the testimony and evidence Fry has submitted here, an amount of $25,000 is an appropriate award for the actual damages Fry suffered as a result of the defamatory statements by O'Dea. There is insufficient evidence in the current record to support a claim for punitive damages.

In addition to the Motion for Default Judgment, Fry also filed a Motion for Freezing of Assets (Document No. 19), requesting the court to freeze all the assets of defendant O'Dea. During the hearing, Fry was not able to identify any specific assets of O'Dea. (Hr'g Tr. at 14.) Consequently, and in light of the amount of damages recommended, there is not a sufficient basis to issue a blanket order for seizing the assets of O'Dea.

## IV. RECOMMENDATION

It is recommended that the Motion for Default Judgment (Document No. 15) be granted and default judgment be entered against defendant Matthew P. O'Dea and in favor of plaintiff Kenneth Ralph Fry in the amount of $25,000.

It is further recommended that the Motion for Freezing of Assets (Document No. 19) be denied.

**IT IS ORDERED** that, pursuant to 28 U.S.C. § 636(b)(1), and because plaintiff has informed the court he is out of the United States (see Document No. 34), the parties shall have to and including **April 30, 2010,** in which to file written objections, unless an extension of time for good cause is obtained. *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990). Such extensions will be freely granted.  Any objections must specify the specific portions of this Report and Recommendation to which objections are made, and set forth the basis for such objections. *See* Fed. R. Civ. P. 72.  Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. *Thompson*, 897 F.2d at 357.

IT IS SO RECOMMENDED AND ORDERED.

Dated March 31, 2010.

_____
THOMAS J. SHIELDS
CHIEF U.S. MAGISTRATE JUDGE